Good morning, Your Honors. Matt Larson of the Federal Defender's Office for Mr. Reyes. Your Honors, Mr. Reyes had the fundamental right to be present for the selection of his jurors. Now, we argue that this included the right to be present for all 18 of the sidebar conferences here, but it included, at minimum, the right to be present for the sidebar at which the judge questioned Ms. Hunt about her expressed potential bias against Mr. Reyes. It was error to exclude Mr. Reyes from that conference, and the question now is whether that error was structural. The only answer that the Supreme Court's precedents allow is yes, Your Honors. As the Supreme Court explained in Gonzales-Lopez, which the government doesn't address at all in its briefs, a structural error has certain qualities. The first is that it affects the framework in which a trial proceeds, rather than a simple mistake in the presentation of some piece of evidence to the jury. The second quality, and this is key for this case, is that the court explained in Gonzales-Lopez that a structural error need not be an error that renders the trial necessarily unfair. Rather, it can be the denial of a particular guarantee of fairness. There, it was the right to hire the lawyer of one's choosing. This didn't necessarily mean that the trial would be fair just because the person could hire the lawyer of one's choosing. Conversely, it didn't mean that trial would be the dissent in that case rather pointed out that, you know, it's possible that by denying one a counsel of choice, you get a better lawyer in the end. But the majority rejected that proposition. Justice? Your position is that a structural error in this situation to have denied the presence of the defendant at the sidebar conference, with respect to Ms. Hunt. With respect to all the conferences. Not all the sidebar. Not denial of his presence at all the sidebars. Our argument, Your Honor, is that, yes, it was a violation as to all of the sidebars, but at least with respect to the one in which Ms. Hunt came up with the question. A structural error as to all of the sidebars? That is the argument we're making, Your Honor. Counsel, some of them had to do with lunch breaks. Indeed. Some did not involve the exercise of preemptory strikes or challenges for cause. Anything of consequence, right? I wouldn't concede that, Your Honor. I think it is something of consequence when an individual's lawyer is exercising on his behalf, and without his participation, his right to strike jurors from the panel. Well, when you say without participation, I don't want to spend a whole lot of time talking about the colloquies that didn't involve Ms. Hunt. Okay. I don't want to take you far afield, but on each of the other occasions that were potentially in the category you're now describing, it seems to me that the counsel was given numerous opportunities to go back and confer with his client prior to exercising the challenges. Okay. Isn't that right, or did I miss one? No, you're right, Your Honor, and I don't want to take you far afield. So if the panel would like, I'll focus on Ms. Hunt's conference. Ms. Hunt said, Your Honor, I have something I'd like to talk about. They brought her up. Mr. Reyes was excluded. What would you like to talk about? I don't know if I can be fair. I have a relative who committed the same crime Mr. Reyes is accused of committing, and I feel that she got a light sentence, and I'm not sure if I can be fair in this case. And they questioned her about it. Mr. Reyes was not present for this. He wasn't able to hear or to see her responses or how she came across or whether she felt to him whether he was the kind of person he would want on his jury. She was sent back to the box. Does Mr. Reyes take the position that his counsel did not inform him of the substance of Ms. Hunt's statement as sidebar? There's nothing in the record to indicate that that was conveyed. And more importantly, Your Honor. There was an opportunity to inform him. The Supreme Court made clear over 100 years ago in Louisville. Could you answer my question? There was an opportunity to inform him? There was an opportunity. Yes, Your Honor. And there's no evidence that he was not informed? No evidence that he was not. No evidence that he was. Either way, correct. And then Ms. Hunt took the stand in open court? No, Your Honor. When she was back in the box in open court, the judge said, can you do you think you can be fair? And she says, what does fair mean? She was subject to cross-examination by Mr. Reyes's attorney, Mr. Luttrell. Only at the sidebar, which didn't happen. It was only the judge questioning her. Did Mr. Luttrell attempt to question her when she was in the room? Not from the record reflects. No, Your Honor. So maybe he's got his answer. Well, maybe he, the lawyer, did, Your Honor. But as the Supreme Court made clear in Louis and subsequent cases, this is not a right of the lawyer. It's the right of the accused. It's the right of the accused to decide who is going to sit in judgment of him and to exercise and to give meaning to that right. Did Mr. Luttrell have enough peremptories to strike Ms. Hunt? He did. But again, Your Honor, I would. Did he use all of his peremptories? All of them? I don't know off the top of my head. I believe they exercise 10. How many did he have? I'm sorry. I don't know. Okay. You began, Mr. Marshall, you began your argument by saying that this was a, that he had a fundamental right to be present for sidebar. Is that a fundamental right based on Rule 43 or based on the Constitution? We're relying on the Constitutional right here, Your Honor. That's going to be a much more amorphous right than anything in Rule 43, isn't it? Well, no, respectfully, Your Honor, because the Supreme Court started talking about this right of presence way back in 1892 in Louis and then talked about it in Diaz and Snyder and Spain and subsequent cases. And it talks about how, and as the jurisprudence sort of evolved about this right, it's like, well, what does the right really mean? Is it a matter of due process? Is it a matter of confrontation in a way that you're sort of, you know, there to confront, you know, jurors who could potentially be averse to you? Ultimately, it's been recognized as emanating from both the confrontation clause and the due process clause. And Rule 43, which came about in the 40s, sought to codify either just this constitutional right and or the common right, the common law right from which it sprung. Mr. Larson, your position is that it's structural error or nothing? In this case, our fallback position is that if the Court applies harmlessness review, the government cannot meet its burden. But our position is that it is structural error under the precedence of the Supreme Court, which the government hasn't even briefed. What's wrong with the government's argument that it's harmless error? Because it's not supported by the case law, Your Honor. The nature of the right here is such that by erroneously excluding Mr. Reyes, at least from the conference at which a person expresses a potential bias against him, the violation of that right is complete upon its wrongful deprivation. No additional prejudice has to be shown because the right, the nature of the right itself is to be present and to participate and to observe. When that is denied wrongly, there is no further inquiry that needs to happen, in the same way that when your right to hire the counsel of your choosing is denied wrongly. We can't sensibly then undertake an analysis of that. But the Feretta cases are the closest analogy that you've got. You haven't got a case on point, do you? About denying this right of presence. Right. We have cases in the State courts that are on point. But, yeah, the Federal courts haven't yet addressed this in terms of Gonzales-Lopez and whether the right, when violated, is a structural error or subject to harmlessness review. What's your strongest authority for your argument? For why it's structural? The first thing you said when you stood up was that the only question in this case is whether this is structural error. What's your strongest authority? Gonzales-Lopez, Your Honor. All right. Because when the Court talks about structural errors, it's the ones that affect the framework, right, from the get-go, the outset. Here, this, you know, the Supreme Court has said in Diaz and other cases, the right to be present for choosing those who will sit in judgment of you can scarcely be as important as the right of trial itself. This is, if not the main show, certainly Act II, you know, the thing that immediately precedes it. You are selecting those who will decide your fate. Now, Mr. Larson, you said that the Federal courts had not addressed this. I think that some of the courts of appeals have addressed similar cases that are actually much more closer to your case than Gonzales-Lopez is. Not since Gonzales-Lopez, Your Honor. There hasn't been a circuit case that I'm aware of that has addressed. And Gonzales-Lopez is important for this reason, right, because it rejected specifically the claim that, see, the Feliciano case, for example, from the Second Circuit that the government relies on, it says, okay, well, you have this right to be present, right? But if it's violated, we're going to apply harmlessness, because we only apply we only consider a violation to be a structural error if it necessarily renders the trial unfair. The Supreme Court expressly rejected that proposition in the subsequent decision of Gonzales-Lopez. It says it is not certainly that can render an error structural, but it is not the be-all and end-all of structural error. In Gonzales-Lopez, it was denying a particular guarantee of fairness, and that was hiring the lawyer of your choice. Here, the particular guarantee is to be able to stand in front of a woman who says she may be biased against you and cannot be fair, and to assess for yourself whether you want her to sit in judgment of you. I'll reserve the balance of my time, Your Honor. Roberts. Okay. Thank you, Mr. Larson. Good morning. Michael Dorr on behalf of the United States. I'd certainly like to address this Gonzales-Lopez case, but one thing I would also hope to do was address whether or not there was error here in the first place. We don't believe there was error in particular because of the day-to-day realities of courtroom life that the Supreme Court referred to in the Russian case on which we rely. The defendant has not exactly specified exactly what the district court was supposed to do here. Well, didn't he? Didn't he say that once this woman said she didn't think she could be fair, that's not discussing lunch, and that he should have been included in the sidebar. Certainly the lawyer made that very clear to the judge. He did. What is he missing? I think what he's missing is exactly how the judge was supposed to do that. You can't walk the defendant. The defendant is in shackles. And at page 377 of the excerpt of the record, the defense had asked to excuse the jury while the defendant came in. So theoretically, you're going to unshackle the defendant to walk him up there, to stand in close proximity to the judge, to the government lawyer, and to Ms. Hunt. And everyone is tight within a few feet of each other so no one else can hear them. Counsel, I've done this. It's possible to excuse the jury to have a private conversation with one juror during Well, I think, Your Honor, at that point you're excusing 100 people who are sitting in the courtroom, including everyone who is in the jury box. And to do that on repeat occasions would Well, we're not talking about repeat occasions. I'm just focusing on one of these many, many sidebars. Sure. The one where the witness, forgive me, where the prospective juror said, I'm not so sure I can be fair. At that point, it does seem to me to be a game changer. Your Honor, I would respectfully disagree with that for a couple of reasons in the record itself. And if you look at pages 261, when Ms. Hunt is first called, through pages 276, 275, that's the sort of Ms. Hunt section of the executive record there. Okay. She stands up and says in open court, I've got a personal issue. Right. The sidebar is then convened. Mr. Reyes's two lawyers are at the sidebar where she says that she had a family matter that led her to question whether or not she could be fair. Right. At no point during that process did defense go to talk to their client. Now, after that, again, in open court, there's a conversation with Ms. Hunt about whether or not she could be fair. And she says, what is fair, calling this into question. It's not exactly reassuring that she asks what's fair mean, but yes. Exactly. And to that point, Your Honor, that's something that's said in open court where Mr. Reyes is sitting there listening. So you've got her on the record. This is not a mystery. This is not like the entire process was at sidebar and he's got no idea what's going on. It really seems to me you're speaking to a different point. He's making a very focused argument that this, that what his client missed was the opportunity to observe her, all of the nonverbals, if you will, when she first had that sidebar and explained what her family problem was. And, Your Honor, at that point, we would argue that he had the opportunity through his representation to have his lawyers observe her, to convey to him what was said. So could the judge have done the entire voir dire, every prospective juror, using the same methodology? I don't believe that you've, as the Supreme Court alluded to, and the Ninth Circuit in the, I think it's Agnone, it begins with the letter A. This is a spectrum of constitutional violations. And so if you're going to say that there's an error, on the one end you've got something that's harmless and on the other end you've got structural defects. And, you know, as more and more of this, to the extent you consider an error, which, you know, we don't, more and more transpires, you might move further and further along the spectrum. Here, obviously, that didn't happen. You had one sequence with the juror. And I would add to Judge Fahy's point. So you have, before you go on, and forgive me for interrupting, please, but I don't think I heard an answer to my question. If you think this was permissible, would it have been permissible to conduct the entire voir dire this way, without the defendant able to see their faces? For every single prospective juror? No. I don't think that would be permissible. Then why was it okay here, where she had expressed that she wasn't sure she could be fair? I think that you are talking about a much smaller period in time. The – there was conversation with Ms. Hunt in open court. There was an opportunity, as the district court made readily available to the defense on repeated occasions for them to talk to her. And they did leave a correctory in the bag. They did not even take a moment to – I'm sorry. Let me back up. In open court, after this conference, when Ms. Hunt says, what is fair, and they go back and forth, at that point, there was no pause in the proceedings. There was no break for the defendant to talk to defense lawyers or defense lawyers to talk to defendant. Defense – one of the defendant's two lawyers got up and challenged a different juror, kicked off a different juror in open court. None of this goes to the question. And I get – I don't want to belabor the point, because I'm mindful of your time. It's just that none of that goes to his inability to observe this juror as she was explaining the family circumstances that caused her to think she might not be able to be fair. Your Honor, at that point, then, if you're going to say it's an error for him not to be able to observe the juror, and so every single time – again, you're supposed to bring the juror up in close proximity to someone who the judge knows, based on this pressure hearing, has a drug problem, has threatened to kill people, has held a knife to someone's throat. So, okay, you're all standing three feet away from one another. I think at that point, you're nowhere near structural error. You're talking about something that would be harmless based on the circumstances. So, you know, I think – Now you're talking about – you're shifting again and not defending the practice, but saying you think the error wouldn't have risen to structural error. No, Your Honor. I absolutely defend the practice. I realize Your Honor said that you've done it in open court. I don't think Ms. Hunt signed up to be standing right across from this defendant. Would I – would I said, counsel, to be clear?  Is it possible to clear the courtroom? And, Your Honor, I respectfully disagree with that. It's – I wouldn't disagree that it's possible. I agree that it's possible. I just worry that the process would break down, especially if every prospective juror after Ms. Hunt saw that they've got a choice. They've got a choice of either airing their darkest family secrets in front of 100 people, or they've got to stand three feet away from the defendant who's unshackled, or people who might know that also every time they raise a potential concern, you clear the courtroom. And this – Pardon me, counsel. In this courtroom, does the judge have chambers? The judge does have chambers, Your Honor. Why couldn't you take Ms. Hunt into chambers along with the defendant? You could at that point bring the defendant back into chambers with Ms. Hunt. Again, though, I think that there would be a risk to the extent the defendant is unshackled and you had to take – Why would he have to be unshackled? Well, I think the same concerns would be evident if Ms. Hunt saw him in his custodial setting with shackles that applies to the concerns. She's going to be put in the jury. She's going to see him in shackles during the trial, isn't she? I don't believe so, Judge. Wasn't he shackled during the trial? He may have been shackled behind the counsel table, but as Record 377 shows, the defense was concerned about the jury being exposed to that, and that's why they asked to clear the courtroom when he was brought in. At the point he's seated behind the counsel table, I don't believe the jury could see it. If they'd taken him back to the judge's chambers, I'm thinking of the location of the – of where the judge's chambers are in our courtroom in – courthouse in Las Vegas. Isn't everybody in the room going to see him? I mean, in order to get to the judge's chambers, he's going to have to stand at the table, move in front of 100 people instead of just – instead of one. He's going to be exposed to everybody in that room. I agree with that. Unless you clear the entire courtroom, in which case there's no reason to take him back to chambers. Yes, Your Honor. I believe that's correct. Logistically, that is accurate. And so, you know, at this – at that point, I – Judge Christin, I take your point. I think, though, that practically speaking – and practically speaking is something that the Supreme Court considers to be of significance in the Russian v. Spain case. I mean, they were talking – Go ahead. Oh, no. I apologize. It just seems to me that the government's position when we talk about whether this is a violation of a rule or a violation of a constitution, at worst it seems to me then the burden would shift to you and your position, which I haven't heard you articulate at this point, is that this was harmless error because there's overwhelming evidence of guilt here by any standard. It's harmless error, and it's – the lack of error, I think, is readily able to be assessed, that there isn't any, because I think the defense, you know, referring to Gonzalez-Lopez says it's not just fundamental unfairness. It's the capability to assess the error. Right. So that's why the federal public defender began his argument by saying this is all about whether this was structural error because if the burden shifts back to you, I think he's got a problem. So do you want to talk about – Why I don't think it's structural error? Yeah. What's the authority? Your time is running out, so just quickly, what's the authority I should look to? Russian v. Spain. The en banc opinion in this court, which was Campbell v. Rice, the citation of which is in our brief, which the court found trial error. The Fulminante case, which drew the distinction between substantial violations, the total deprivation of counsel being a structural defect, whereas the deprivation of counsel in a preliminary hearing, for instance, being something that was a trial error and listing in essentially both columns what fell on one side and what fell on the other side. And frankly, I would offer Gonzalez-Lopez itself. In that case, you've got a complete and total deprivation of the right to choose your counsel. The Supreme Court acknowledged that the government in that case agreed there was an error, and yet the Supreme Court walked through the facts saying that the government – I'm sorry, the judge didn't allow this counsel to sit at the counsel table. It even positioned a marshal in between the defendant and the lawyer, so they couldn't even see each other. And I think that is significant in talking about the scope of the violation here and the significance and why it might be a structural defect. I would also add that that case talked about the tactical nature of jury selection, the opportunity to choose your lawyer so that your juror can – the lawyer can engage in the strategic decisions with respect to jury selection. This is something that at PGA for the excerpts of record, defense counsel articulated they had a strategy vis-à-vis jury selection. This is something that they were making decisions about, that they had a plan in place for who they wanted to have. And so I think that the – and finally, the last thing I want to add because I know I'm running out of time. The – another important factor with respect at the end of Gonzalez-Lopez, they talk about the scope of the right itself. You know, they talk about the court's calendar being a consideration and various other factors that come into play that circumscribe the right to choose your own lawyer. And I think that's something that would apply more to the first prong of the case as far as whether or not there was error. But if you take all those into consideration and you really look through the facts of the case and the facts of Campbell v. Rice, I'm sorry, and the facts of the Russian case, you come out on the other end with this being, again, we submit not an error, but at the very least, it's something that the courts should have the opportunity and the discretion to decide whether or not it's harmless or isn't, and we think it is. Kennedy, do you agree with your friend that there was no evidence in the record that Luttrell did tell the defendant about what Mrs. Hunt had said? I agree. There's nothing in the record to indicate the conversations between Mr. Luttrell, one of the two defense lawyers, and his client. I would only point to various elements of the record that indicated that there was ample opportunity to do so. And the judge had given him ample opportunity to discuss the matter with his client. Well, the judge gave him repeated ample opportunity to discuss it with his client. And, again, there was, at the moment, after that open court questioning of Mrs. Hunt and I realize I'm over, if I may just finish this point. There was an opportunity at that point also to confer about this, which was not taken. You know, there were two. You don't know if it was taken, right? I'm sorry? You don't know if it was taken, right? There was no indication in the record to suggest that there was a pause in the proceedings, as there had been in other instances when a pause or a moment was requested. The judge said, you know, defense. Right. And then the record indicates that they made two peremptory challenges of different people, and then we continued rolling on. Thank you. Thank you, Mr. Doar. Mr. Larson. Yes, Your Honors. Just a couple of points here. First, this is not counsel's right. This is the accused's right. And this was made clear over 100 years ago by the Supreme Court in Lewis, reaffirmed again in Snyder, and I would direct your honors to those decisions. This is not the right of the counsel to exercise. If it were, a defendant wouldn't have to be present at all for voir dire. The defendant could be in lockup, and counsel could do everything. That's not the law, Your Honors. Is there any reason why Mr. Lopez hasn't filed an affidavit saying that he wasn't informed by Mr. Luttrell of what Ms. Hunt said, and he didn't have the opportunity to discuss the issue with Mr. Luttrell? Your Honor, Mr. Reyes asked to be present for these sidebars and was told he couldn't be by the judge, and the judge said no, he hasn't put in an affidavit, Your Honor. Because our position. Yes, Your Honor. The reason is our position is that this is structural error, and Mr. Reyes doesn't have to explain what different choices he would have made because. I got it. In any event, Your Honors, this is the right of the accused and not his lawyer, and the Supreme Court has made that clear long ago. Secondly, I'd like to address just briefly this completely new argument and completely extra record argument about how Mr. Reyes couldn't have been brought up and he was dangerous and he would have lunged at someone with a knife. This is nowhere in the government's brief, and this is nowhere supported in the record. And frankly, as Your Honor pointed out, the government is evading the question here. The question is not about judicial management and how a judge could have procedurally arranged to have Mr. Reyes present to hear Ms. Hunt talk. It's about the violation of his right to hear her talk. But he was shackled. Your Honor. And there would have been some difficulty in getting him to the sidebar without everybody in the audience seeing him shackled. Your Honor, my colleague was trial counsel in this case. I was not. I will defer to his recollection of whether Mr. Reyes was shackled or not. But as Judge Christin pointed out, there are ways of addressing this administratively which don't concern the question here. The question here is whether it was legal error, whether it was structural error to deny an accused over his objection the right to witness someone who would sit in judgment of him and who did sit in judgment of him, express her insecurity and uncertainty as to whether she could be fair to him. When you are on trial for your life or for a term of years, as in this case, you have the right to see and to hear these expressions of doubt. When she was asked the precise question, can you be fair? That one moment in open court, yes, Your Honor, that's true. But as Judge Christin also talked about, was this, you know, and my colleague was saying this wasn't like a complete deprivation. He wasn't out of the courtroom entirely. That may be true. It was one violation, not ten violations. The point is it was still a violation. It's not a matter of quantity. It's a matter of quality. The nature of the right here is to observe those, to get to make all of the subtle judgments that are inherent in jury selection. My colleague also talks about how counsel has a strategy of jury selection. Again, Your Honors, the strategy of selecting those who will sit in judgment of you in yours primarily and the right to evaluate those people in yours primarily to the accused, not his lawyers. And, again, this is – this has been clear for over 100 years. If it were the counsel's right to waive, then the accused wouldn't even have to be in the courtroom at all. And a lot of – the reason why this is a question of first impression in my last point, I just want to address Russian v. Spain, which my colleague relies on. The facts there, first of all, are materially different. Why? It wasn't an error in the selection or the composition of a jury. It was in the course of a year-and-a-half-long trial, one juror going to the judge ex parte and saying, oh, one of the defense witnesses I think killed my friend 20 years ago, and I'm worried about this, and it's upsetting me. That's not the error here, first of all. And more importantly, Your Honors, the court in Russian v. Spain expressly left this question open. It said denying the right of presence is generally subject to harmless error, quote, unless the deprivation by its very nature cannot be harmless. And that's the argument we're making here. We're arguing that it cannot be harmless here because it's an error committed at the outset that affects the framework of how trial proceeds. It is the selection of those who will sit in judgment of you. It is not a stray remark that a juror makes to a judge a year-and-a-half into trial. It is the selection of the very people who are going to decide your fate. And here the facts are that one of those people came forward and said to Judge, I don't think I can be really fair to the accused here. And she got up at sidebar and explained why and was questioned about this. And Mr. Reyes, over his objection, heard nothing of it. That's the error here, Your Honors. And under Gonzalez-Lopez, again, which is entirely ignored by the government, this is structural error. This is not the kind of error involving a wrongful admission of a confession halfway into trial that you can assess because, oh, all the other evidence is overwhelming. This is a fundamental thing. I think we understand the argument. You're way over your time. I think we've got it. Thank you, Your Honor. Thank you very much. And thank both of you for the argument.
judges: Bybee, Bea, Christen